CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
August 27, 2025
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| GILFORD A. LEE, | ) |
| Plaintiff, | ) Case No. 7:24-cv-00287 |
| v. | ) **MEMORANDUM OPINION** |
| RANDY BOYD, | ) By:  Hon. Thomas T. Cullen |
|  | )       United States District Judge |
| Defendant. | ) |

Plaintiff Gilford A. Lee, proceeding *pro se*, filed a civil-rights action asserting claims under 42 U.S.C. § 1983 against Defendant Randy Boyd. (*See generally* Am. Compl. [ECF No. 36].) Now before the court are Defendant's motion to dismiss (ECF No. 42), Defendant's amended motion to dismiss (ECF No. 45), Plaintiff's motion for clerk's entry of default (ECF No. 51), Plaintiff's motion to transfer the case (ECF No. 55), and Plaintiff's motion for discovery (ECF No. 56). For the reasons set forth below, Defendant's amended motion to dismiss (ECF No. 45) will be denied, Defendant's motion to dismiss (ECF No. 42) will be denied as moot, and Plaintiff's motions (ECF Nos. 51, 55, 56) will be denied.

### I.

Plaintiff's claims stem from allegations that Defendant failed to prevent an attack against Plaintiff by another inmate at Wallens Ridge State Prison ("WRSP"). (*See* Am. Compl. 2–3.) Plaintiff alleges that, on February 22, 2024, while trying to use the pod phone, he was assaulted by another prisoner because he is gay. (*Id.* at 2.) Plaintiff further alleges that, months before the assault, he asked Defendant, the manager of the C-Building unit at WRSP, both verbally and in writing, to be placed in a pod where he would not be at risk of harm or

harassment due to his sexuality. (*Id.* at 2, 5.) In September 2023, following Plaintiff's complaints of harassment by fellow inmates and requests to be moved, Defendant moved Plaintiff from pod C-6 to pod C-4. (*Id.* at 5.)

Despite the change in pod, Plaintiff began to experience renewed harassment in December 2023 and January 2024. (*Id.*) Plaintiff informed several officers and other staff members at WRSP about the harassment he faced as an openly gay man and again asked to be moved to a different pod, but the staff did not take him seriously or heed his requests. (*Id.* at 6.) One sergeant Plaintiff spoke to told Plaintiff that he "d[idn't] look gay" and otherwise ignored his request to be moved. (*Id.*) A lieutenant also told Plaintiff that he did not look gay and did not take Plaintiff's concerns seriously. (*Id.*) On January 4, 2024, Plaintiff wrote to Defendant about the issue, but Defendant did not respond. (*Id.*) Plaintiff wrote Defendant again on January 10, 2024, and again received no response. (*Id.*)

A few weeks later, Plaintiff visited Defendant's office and spoke with Defendant about the harassment he was experiencing. (*Id.*) Defendant told Plaintiff that he would look into the matter. (*Id.*) On February 10, 2024, Plaintiff spoke with Defendant again. (*Id.* at 7.) During that conversation, Defendant told Plaintiff that he had moved Plaintiff the first time "because [he] thought [Plaintiff] [was] straight" and informed Plaintiff that there was no LGBT pod or community at WRSP and that he therefore could not help Plaintiff. (*Id.*) He advised Plaintiff to "call PREA" because they might be able to help but told Plaintiff, "If you[ were] straight I could move you today but you said you['re] gay so I'm not getting involved." (*Id.*)

Throughout January and February, while Plaintiff sought to be moved, he was still being harassed by fellow inmates—specifically gang members—in the C-4 pod. (*Id.*) He was

- 2 -

called several slurs relating to his sexual orientation and was overlooked for the phone, kiosk, and shower.[1] (*Id.*) Plaintiff alleges that he was experiencing a mental and emotional breakdown because of the harassment and could not get any help, even from WRSP mental-health staff. (*Id.*) Plaintiff submitted a written complaint about the issue on February 12, 2024. (*Id.*) On February 14, 2024, Defendant responded to the written complaint, stating Plaintiff was "housed appropriately." (*Id.* at 8.)

On February 20, 2024, Plaintiff submitted a regular grievance about the issue, but the next day, the grievance was rejected at the intake stage on the grounds that Plaintiff "was not personally affected and that nothing has occurred to warrant a grievance." (*Id.*) The rejection also stated that, "[p]er U.M. Boyd you['re] housed appropriately." (*Id.*)

On February 22, 2024, the day after his grievance was rejected, Plaintiff was assaulted in C-4 pod by a fellow inmate while Plaintiff was trying to use the phone. (*Id.*) The inmate told Plaintiff, "[N]o fags can use our phone," and said Plaintiff could not use the phone because he had "the Aids virus." (*Id.*) The inmate also threatened to stab Plaintiff if he used the phone. (*Id.*) When the inmate tried to physically remove the phone from Plaintiff's hand, Plaintiff, fearing for his safety, struck the assailant and fighting ensued. (*Id.* at 9.) No officers were present during the incident. (*Id.*)

Plaintiff had to be taken to a hospital to be treated for the injuries he sustained during the altercation. (*Id.*) He suffered a fractured eye socket and fractured nose and received six

---

[1] It is unclear whether Plaintiff alleges that staff members refused to allow him privileges or if the harassing inmates held some sway over these amenities.

stiches in his left eyebrow. (*Id.*) Plaintiff alleges that this incident would not have occurred if Defendant had taken his complaint seriously. (*Id.*)

Based on these allegations, Plaintiff claims that Defendant violated his Eighth Amendment right to be free from cruel and unusual punishment through deliberate indifference to Plaintiff's safety and that Defendant violated the Fourteenth Amendment right to equal protection under the law. (*Id.* at 10.) Defendant has moved to dismiss Plaintiff's equal protection claim under Federal Rule of Civil Procedure 12(b)(6). (*See* Def.'s Am. Mot. to Dismiss [ECF No. 45]; Memo. in Supp. of Def.'s Am. Mot. to Dismiss [ECF No. 46].)

## II.

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint. *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be "plausible," a plaintiff's claim must be supported by factual allegations sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although this "plausibility" standard is not akin to "probability," it does require "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (citations omitted). Additionally, the court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017) (citations omitted). And, because Plaintiff is proceeding *pro se*, the allegations are construed "liberally" in his favor. *Shaw*, 59 F.4th at 127. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief" as required by Rule 8. *Iqbal*, 556 U.S. at 679 (cleaned up).

### III.

Plaintiff's claims arise under 42 U.S.C. § 1983, which authorizes a civil action by a citizen deprived of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person acting under color of state law. To state a claim under § 1983, a plaintiff must allege both (1) "'the violation of a right secured by the Constitution and laws of the United States'" and (2) "'that the alleged deprivation was committed by a person acting under color of state law.'" *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (quoting *West v. Atkins,* 487 U.S. 42, 48 (1988)). To state a § 1983 claim based on an equal protection violation, a plaintiff must show "that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001); *see Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 607 (4th Cir. 2020), *as amended* (Aug. 28, 2020) ("[S]tate

action is unconstitutional when it creates arbitrary or irrational distinctions between classes of people out of a bare desire to harm a politically unpopular group." (cleaned up)).

Defendant argues that Plaintiff's equal protection claim fails because he has not identified any similarly situated inmate who was treated differently than he was. (Def.'s Memo. in Supp. of Am. Mot. to Dismiss 3–4.) In most cases, the lack of comparator evidence is fatal to an equal protection claim. *See, e.g.*, *English v. Clarke*, 90 F.4th 636, 649 (4th Cir. 2024) (finding no triable fact as to Plaintiff's equal protection claim where he had "not attempted to identify any better-treated individuals similarly situated to him"). But in most equal protection cases, there is no direct evidence of discriminatory treatment and courts are left to rely on circumstantial evidence to show intentional discrimination.

When faced with direct evidence of discriminatory treatment, courts in this circuit have not dismissed equal protection claims for lack of comparator evidence. In *Krell v. Braightmeyer*, the Fourth Circuit affirmed the denial of qualified immunity to an officer who violently arrested and refused medical treatment to the plaintiff when the defendant officer had used a slur regarding the plaintiff's sexual orientation during the arrest. 828 F. App'x 155, 159 (4th Cir. 2020) (unpublished). The court did not evaluate whether there was any evidence of a similarly situated comparator but concluded that, based on the defendant's "alleged refusal to alleviate [the plaintiff's] pain—a decision punctuated with a vile epithet— . . . the district court properly denied qualified immunity to [the officer]." *Id.*; *see also Mark Vogel Acquisitions, LLC v. Prince George's Cnty., Md.*, No. 24-CV-03008-LKG, 2025 WL 2374695, at *6 (D. Md. Aug. 14, 2025) ("A plaintiff may rely on *either* direct evidence of discriminatory animus or circumstantial

comparator evidence to support an equal protection claim.") (citing *Sylvia Dev. Corp. v. Calvert Cnty., Md.,* 48 F.3d 810, 818–19 (4th Cir.1995) (emphasis added)).

Other federal courts have required comparator evidence *only* when there is no direct evidence of discrimination. *See, e.g.*, *Adams v. Reagle*, 91 F.4th 880, 892 (7th Cir. 2024) ("Absent direct evidence of a racial animus on [the defendant's] part, [the plaintiff] . . . must show that he was treated differently from a similarly situated individual of a different race owing at least in part to a discriminatory motive."); *Peterson v. Burris*, No. 17-1291, 2017 WL 8289655, at *3 (6th Cir. Dec. 8, 2017) ("To establish an equal protection violation, *in the absence of direct evidence of discrimination*, a prisoner must allege that the defendants treated differently a similarly situated prisoner who was not a member of the protected class." (emphasis added)); *Rodgers v. Knight*, 781 F.3d 932, 946 (8th Cir. 2015) (holding that equal protection claim failed because the plaintiff "presented no direct evidence of racial discrimination *or* indirect evidence that similarly situated persons were treated differently" (citations omitted) (emphasis added)); *Zahaf v. N.Y. Dep't of Corr. & Cmty. Supervision*, No. 22-CV-291-LJV, 2024 WL 4362313, at *10 (W.D.N.Y. Sept. 30, 2024) ("Typically, a plaintiff asserting an equal protection claim must allege that similarly situated persons have been treated differently, but allegations about comparators are not necessary when there is direct evidence of intentional discrimination." (cleaned up)); *Thompson ex rel. Neveah T. v. Martinez*, No. EP-24-CV-276-KC, 2025 WL 1779762, at *17 (W.D. Tex. June 27, 2025) ("Absent allegations which, if true, would amount to direct evidence of discriminatory intent, a plaintiff must typically identify a similarly situated individual of another race who was treated differently."); *Dixon v. Brown*, No. 5:24-CV-243-MTT-CHW, 2024 WL 5145453, at *6 (M.D. Ga. Dec. 17, 2024) ("When there is no direct

evidence of discrimination, a plaintiff must generally allege that similarly situated persons—or 'comparators'—have been treated differently through state action to state an equal protection claim." (citations omitted)).

The Fifth Circuit's decision in *Johnson v. Johnson*, 385 F.3d 503 (5th Cir. 2004), is particularly relevant here. In that action, as in this one, the defendants sought to dismiss an equal protection claim brought by a homosexual prisoner who claimed he was not given the same protection as heterosexual inmates on the ground that "the complaint fail[ed] to identify any non-homosexual prisoners who were similarly situated but were treated better." *Id.* at 530. The Fifth Circuit held that "evidence of the type the defendants request is not essential to the claim." *Id.* at 531. The court explained:

> In most cases, a plaintiff lacks direct evidence of intentional discrimination, and he therefore will try to rely on evidence that two groups received different treatment, which can support an inference that the decisionmaker purposefully engaged in discrimination. But those kinds of inference-producing comparisons are unnecessary where the § 1983 plaintiff has direct evidence of discriminatory motive.

*Id.* (citing *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047–48 (5th Cir.1996)). The court held that, because the complaint "contain[ed] detailed allegations that, if true, would constitute direct evidence that the defendants treated [the plaintiff] differently in making their decisions and did so because of his status . . ., we do not believe that a plaintiff's complaint must plead the circumstantial case that the defendants are requesting." *Id.*

This court agrees with the Fifth Circuit's reasoning in *Johnson* that, where a plaintiff makes "detailed allegations that, if true, would constitute direct evidence" that prisoner officials offered an inmate a lesser degree of protection from other inmates based on his sexual

- 8 -

orientation, the complaint need not identify specific similarly situated inmates who were treated differently in order to survive a motion to dismiss. *Id.*

Here, the court finds that Plaintiff has alleged direct evidence of unequal treatment and discriminatory intent. Plaintiff alleges that Defendant told him "he moved the plaintiff the first time because [he] thought [Plaintiff] [was] straight." (Am. Compl. 7.) Defendant also told Plaintiff point blank, "If you[ were] straight I could move you today but you said you['re] gay so I'm not getting involved." (*Id.*) Plaintiff's allegations establish that Defendant had the decision-making authority to move Plaintiff to another pod to avoid harassment from other prisoners but that he would only exercise that authority for an inmate he understood to be heterosexual. (*See id.*) As alleged in the complaint, Defendant's comments were unambiguous and his decision not to move Plaintiff to another pod to avoid harassment was based solely on Plaintiff's sexual orientation. The court therefore finds that Plaintiff has alleged direct evidence of discrimination and is therefore not required to identify a similarly situated comparator. Defendant's arguments in favor of dismissal are unavailing, and his amended motion to dismiss will be denied.

## IV.

After Defendant filed his partial motion to dismiss and answered the complaint, Plaintiff filed a motion for clerk's entry of default as to Defendant (ECF No. 51). As grounds for his motion, Plaintiff argues that more than 20 days elapsed between the date Defendant was served and the date he responded to Plaintiff's complaint. (*Id.* at 1.)

Defendant was sent a request for waiver of service on July 16, 2024. (*See* ECF No. 29.) Because Defendant waived service, Defendant had 60 days from that date to respond to

Plaintiff's complaint, making his response due on September 16, 2024. *See* Fed. R. Civ. P. 12(a)(1)(A)(ii). On September 12, 2024, Defendant filed a motion for extension of time to respond to the complaint (ECF No. 33), and the court granted him an additional 30 days to file his response (ECF No. 34). But before the time to respond elapsed, Plaintiff filed an amended complaint. (*See* ECF No. 36.) The filing of the amended complaint reset Defendant's time to respond, *see* Fed. R. Civ. P. 15(a)(3), and Defendant again requested an extension of time to respond to the amended complaint (*see* ECF No. 39). The court granted his request and ordered Defendant to file his response no later than November 15, 2024. (ECF No. 40.) Defendant filed a motion to dismiss (ECF No. 42), an answer (ECF No. 44), an amended motion to dismiss (ECF No. 45), and an amended answer (ECF No. 47), all on November 15, 2024. He therefore fully responded to Plaintiff's amended complaint within the time he was ordered to do so. Moreover, Defendant has repeatedly appeared and defended this case since he received a copy of the complaint and waived service. *See* Fed. R. Civ. P. 55(a) (providing for default only when a defendant "has failed to plead or otherwise defend" against plaintiff's claims for relief). There is no basis for entry of default against Defendant, and Plaintiff's motion seeking an entry of default (ECF No. 51) will be denied.

Plaintiff also filed a motion seeking the transfer of this action to another court (ECF No. 55). Plaintiff asks that the case be transferred under 28 U.S.C. § 1404(a) on the grounds that his "constitutional rights are violated consistently" and he "face[s] immin[ent] danger on the horizon due to regional neglect." (*Id.* at 1.) Plaintiff offers no additional factual detail or evidence in support of his motion.

- 10 -

Section 1404(a) allows for the transfer of a civil case to another district or division where the case could have properly been brought or to any district or division to which all parties have consented. Transfer under § 1404(a) is inappropriate because Defendant has not consented to transfer and because Plaintiff has not identified any other venue in which this case could have been properly brought. *See* 28 U.S.C. § 1391(b) (allowing a civil action to be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located," "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred," or "if there is no such district . . . , any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action"). The court will therefore deny Plaintiff's motion to transfer.

Finally, Plaintiff has also filed a motion for discovery. (ECF No. 56.) Plaintiff's motion appears to be a request for production of documents directed to Defendant, and Defendant has responded to the motion indicating that he would produce the requested documents and/or respond to Plaintiff's requests. (*See* ECF No. 58.) The court will therefore deny Plaintiff's motion for discovery without prejudice to Plaintiff's ability to file later motions to compel any discovery he has sought from Defendant and believes Defendant has wrongfully withheld under Federal Rule of Civil Procedure 37.

## V.

For the reasons set forth above, the court will deny Defendant's amended motion to dismiss and deny Defendant's original motion to dismiss as moot. Additionally, the court will deny Plaintiff's motion for entry of default, Plaintiff's motion to transfer, and Plaintiff's motion for discovery.

The clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 27th day of August, 2025.

> */s/ Thomas T. Cullen*
> HON. THOMAS T. CULLEN
> UNITED STATES DISTRICT JUDGE